UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAJAH HARKOUS,

                        Plaintiff,          Civil Action No. 19-13290
                                             Honorable Terrence G. Berg
v.                                     Magistrate Judge David R. Grand

KILOLO KIJAKAZI,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

                        Defendant.
_____/

**REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 25, 28)**

Plaintiff Najah Harkous ("Harkous") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 25, 28), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ's") conclusion that Harkous was not disabled under the Act prior to April 10, 2018. Accordingly, the Court

**RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 28)** be **GRANTED**, Harkous' Motion for Summary Judgment **(ECF No. 25)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.   REPORT

### A.   Background

Harkous, born October 25, 1955, was 61 years old at the time of her application date of November 28, 2016.  (ECF No. 16-2, PageID.84, 93).  Her application for benefits states that she completed sixth grade and never worked (ECF No. 16-6, PageID.231-232).  She alleges disability as a result of hypertension, hypothyroidism, diabetes mellitus, and peripheral neuropathy.  (*Id.*, PageID.231).

After Harkous' application for SSI was denied at the initial level on October 11, 2017 (ECF No. 16-4, PageID.150), she timely requested an administrative hearing, held on August 21, 2018, before Administrative Law Judge ("ALJ") Rita Elizabeth Foley (ECF No. 16-2, PageID.100-136).  Harkous, represented by attorney Jennifer Jamula, testified, as did vocational expert ("VE") Elizabeth Pasikowski. (*Id.*).  On December 3, 2018, the ALJ issued a partially-favorable decision, finding that while Harkous was not disabled between November 28, 2016 and April 9, 2018, she was disabled as of April 10, 2018.  (*Id.*, PageID.84-95).  On October 21, 2019, the Appeals Council denied Harkous' request for review of the ALJ's determination.

2

(*Id.*, PageID.68-70).  Harkous timely filed for judicial review of the final decision on November 7, 2019.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Harkous' medical record, function and disability reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

## B.    The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

3

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, ALJ Foley found at Step One that Harkous had not engaged in substantial gainful activity at any time from the date of the application through the date of decision. (*Id.,* PageID.86).  At Step Two, the ALJ found that from the date of the application through April 9, 2018, Harkous suffered from the medically-determinable impairments of diabetes, depression, gastroesophageal reflux disease ("GERD"), and chronic obstructive pulmonary disease ("COPD"), but that none of them, considered separately or in combination,

4

rose to the level of a "severe" impairment. (*Id.*). Thus, for that timeframe, ALJ Foley found Harkous was not disabled.

In contrast, for the period from April 19, 2018 forward, the ALJ found at Step Two that Harkous experienced the severe impairments of degenerative disc disease of the cervical and lumbar spine, diabetes with peripheral neuropathy, COPD, GERD, and depression. (*Id.,* PageID.90). At Step Three, the ALJ found that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.,* PageID.90-91). The ALJ then assessed Harkous' Residual Functional Capacity ("RFC"), finding that as of April 10, 2021, she was limited to light work with the following additional limitations:

> [N]ever climbing ladders, ropes or scaffolds, kneeling or crawling. Occasionally climbing ramps or stairs, balancing, stooping, crouching. Limited to occupations which do not require more than occasional rotation, flexion or extension of the neck. Occasional reaching overhead bilaterally. Work limited to performing simple, routine and repetitive tasks, performed in a work environment free from fast paced production requirements, involving only simple work-related decisions, and with few, if any, work-place changes. Only brief and superficial interaction with the public. In addition to regularly scheduled breaks, would be off task 10% of the time during an eight-hour workday.

(*Id.,* PageID.92).  The ALJ found that Harkous' age, coupled with her lack of work history and her inability to perform greater than light work directed a finding of disability.[1]  (*Id.,* PageID.93-94).

###   C.   **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is

---

[1] An individual 55 or older with no past relevant work and an RFC for unskilled, light or sedentary work generally directs a finding of disability. 20 C.F.R. § 404, Subpart P, App. 2, Rule 202.04. While Harkous argues that she has *less* than a high school education (rather than a high school education as found by the ALJ), it would not change the finding that she was disabled as of April 10, 2018.  The combination of Harkous' age, the inability to perform past relevant work, the restriction to light, unskilled work, and a limited education would likewise direct a finding of disability.  *Id.* at Rule 202.01.

not high.  Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. February 9, 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.   Analysis

In her motion for summary judgment, Harkous challenges the ALJ's Step Two determination that she was not disabled between the SSI application date of November 28, 2016 and April 9, 2018.  She assigns nine points of error to the ALJ's findings, yet several of those do not apply to the Step Two determination or the facts of this case.  (ECF No. 25, PageID.706-707).  For example, her second claim, that the ALJ did not comply with SSR 96-8p, which sets forth the rules for crafting a residual functional capacity ("RFC"), is inapplicable to the ALJ's Step Two findings.  *Id.  See* 1996 WL 374184, at *3(July 2, 1996)("RFC is an issue only at steps 4 and 5 of the sequential evaluation process.").  Harkous' fourth claim, that the ALJ overstated her education level, likewise does not pertain to the Step Two findings but will be addressed along with the ALJ's discussion of the subjective claims.  Her fifth claim, that the ALJ erred by declining to obtain the opinion of a medical advisor to assess her condition for the period prior to April 10, 2018, is defeated by the fact that Harkous was actually seen in person by two consultative examiners in the period prior to April 10, 2018.[2]

---

[2] On September 7, 2017, Cynthia Shelby-Lane, M.D. performed a consultative physical examination on behalf of the SSA, stating that "no functional limitations or deficit [were] noted." (ECF No. 16-8, PageID.377).  The same day, Julia A. Czarnecki, L.L.P., working under the direction of psychologist Mitchel Solomon, Ph.D., performed a consultative psychological examination on behalf of the SSA, concluding that Harkous "is not evidencing any significant cognitive impairments or problems with short-term working memory or concentration that would interfere with her ability to engage in simple, routine, work-related activities or follow simple

The Court considers Harkous' remaining claims that substantial evidence did not support the Step Two determination (claim one); that the ALJ did not consider the combined effects of her medically determinable impairments (claim three); that the ALJ improperly rejected her claims of limitation based on "minor inconsistencies" in the evidence and professed educational level (claims four, six, nine); and, that the ALJ did not abide by the "treating physician rule" (claims seven and eight).  These claims will be addressed in the following order: (1) Whether the ALJ's findings were supported by substantial evidence and whether she considered the combined effects of Harkous' medically determinable impairments (claims one and three); (2) the ALJ's findings regarding Harkous' subjective claims of limitation (claims four, six, and nine); and (3) the ALJ's treating physician analysis (claims seven and eight).

1.    *Substantial Evidence Supports the Step Two Determination*

Harkous disputes the ALJ's finding that her medically-determinable impairments of diabetes, depression, GERD, and COPD, considered separately or in combination, did not rise to the level of a severe impairment.  (ECF No. 25, PageID.715).

At Step Two of the sequential analysis, the applicable Social Security

---

verbal or written instructions, other than restrictions due to language barriers." (ECF No. 16-7, PageID.371).

regulations states that an impairment is not severe "if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a). Basic work activities include the "abilities and aptitudes necessary to do most jobs[,]" including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling[.]" and understanding, remembering, and following 'simple instructions, using judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.922(b). The claimant – not the ALJ – bears the burden of showing that she has such an impairment <u>and</u> that the impairment was severe for at least twelve consecutive months. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 188 (6th Cir. April 27, 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment … that meets the duration requirement of [20 C.F.R. § 416.909] (longer or expected to be longer than a continuous period of at least 12 months), or a combination of impairments that is severe and meets the duration requirement, then she is not disabled.").

In finding that Harkous was not disabled at Step Two before April 10, 2018, the ALJ stated that none of the medically-determinable impairments, considered separately or in combination, significantly limited her work-related activity for 12 consecutive months. (ECF No. 16-2, PageID.86). Contrary to Harkous' argument,

the ALJ provided a comprehensive discussion of the medical records created prior to April 10, 2018, to support this finding.  She noted that treating physician Mohamed Ayad, M.D. prescribed medications for diabetes, GERD, and hypertension, but that his records did not indicate that any of the conditions caused physical limitation.  (*Id*., PageID.88).  She also observed that the records did not contain "clinical evidence of degenerative musculoskeletal changes." (*Id.*).  The ALJ noted that Harkous was treated only briefly for pneumonia.  She cited Dr. Shelby-Lane's September 2017 finding of no significant limitation in Harkous' physical functioning.  (*Id.*)  The citations accurately reflect the underlying records.  (*See* ECF No. 16-8, PageID.310, 312[3]; No. 16-8, PageID.375-78; No. 16-12, PageID.635-36, 638, 642, 644, 646, 650-51, 653).

As to Harkous' allegations of mental impairment, the ALJ noted that Dr. Ayad did not report a "flat affect," "panic attack[s]," or "psychosis," and "never reported abnormal mental exams" for the period in dispute.  (*Id*.).  The ALJ further supported her finding of non-severe mental limitations by citing psychologist Czarnecki's observation of an appropriate affect; a logical, goal directed and organized thought process; intact immediate memory; and only mild limitation in recent memory. (*Id*.,

[3] The ALJ actually cited PageID.311 ("1F2"), but it is apparent this was a mis-citation, as PageID.311 is a medication list, whereas PageID.310 and 312 clearly reflect Dr. Ayad's normal clinical findings (*e.g.*, "neck supple," "normal" hear sounds, "General: WNWD without any distress," "no focal motor weakness," "back without any tenderness or deformity," "extremities without any edema or tenderness or loss of normal motion," "reflexes symmetric," "steady gait."

PageID.89). The ALJ cited Czarnecki's report that Harkous did not show "significant limitations" in mental functioning. (*Id.*). Again, the ALJ's recitation of the record evidence was accurate. (*e.g.*, ECF No. 16-7, PageID.369-371 ("patient is not evidencing any significant cognitive impairments or problems with short-term working memory or concentration that would interfere with her ability to engage in simple, routine work-related activities . . ."); No. 16-11, PageID.567, 570, 16-12, PageID.635, 646 ("AAO x 3, NAD, normal level of consciousness")).

### 2. The ALJ Adequately Considered Harkous' Subjective Limitations

Harkous also argues that the ALJ erred in rejecting her claims of physical and psychological limitation. (ECF No. 25, PageID.719). Harkous faults the ALJ for providing only a "boilerplate" determination that her claims were not supported by the transcript. (*Id.*, PageID.720). She argues, in effect, that the ALJ erred by failing to consider the side effects of her medications including dizziness, headache, depression, confusion, changes in behavior and mood, nausea, fatigue, frequent urination, bowel incontinence, and joint pain. (*Id.*, PageID.722). She also contends that the ALJ did not consider the effects of poverty, mental impairment, and transportation limitations on her ability to procure adequate treatment. (*Id.*, PageID.723).

SSR 16-3p governs evaluations of a claimant's symptoms. While Harkous disputes the ALJ's "credibility" determination, the Rule states that the agency has

"eliminat[ed] the use of the term 'credibility'" and instead "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *3 (Oct. 25, 2017). The ruling follows a two-step process:

> First we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms ... Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]

*Id*. at *3.

The Ruling further states that "If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion[.] *Id.* at 6. This evidence may include[ ] statements from the individual[.] *Id.* As stated above, an individual's testimony is not evaluated based on her "credibility." Instead a claimant's testimony is evaluated on "whether the statements are consistent with objective medical evidence and the other evidence." *Id.*

Harkous' argument that her claims were erroneously discounted fails for multiple reasons.[4]   First, her contention that her allegations of limitations were

---

[4] In one section of her brief, Harkous wrote, "Harkous testified that she was" but then left the rest of the sentence completely blank.   (ECF No. 25, PageID.719).   Nevertheless, her credibility

dismissed with a boilerplate statement and nothing more is contradicted by the ALJ's two-page discussion of the records from November 2016 to April 2018 contradicting Harkous' claims and supporting the non-disability conclusion (ECF No. 16-2, PageID.88-90). As discussed above, the ALJ's findings are consistent with the record evidence. Second, Harkous' claim that medication side effects, poverty, psychological problems, and transportation limitations were not considered is unaccompanied by even one citation to the transcript. Harkous did not allege medication side effects at the hearing or in an earlier statement. (ECF No. 16-6, PageID.244) Nor does the Court's review of the record reveal anything different. On the contrary, at an August 3, 2017 appointment with Dr. Ayad, Harkous "report[ed] doing well on current treatment regimen with no significant reported side effects." (ECF No. 16-12, PageID.650). Her claim that her medical care was compromised by poverty is contradicted by her testimony that she had access to subsidized medical care from the time she became a citizen approximately three years before the hearing (ECF No.16-2, PageID.124). She has not otherwise shown that her care between November 2016 and April 9, 2018 was limited by financial constraints. As discussed above, both the treating records and consultative examination records reflected an unremarkable mental status. The ALJ also noted

---

argument was made sufficiently clear in the remainder of her brief that the Court has been able to address it in full.

that Harkous was able to travel by car as a passenger to grocery shop twice a month. (*Id*., PageID.89). The medical transcript shows that she received treatment regularly. The ability to procure transportation for shopping and attend medical appointments on a regular basis stand at odds with the conclusion that she was unable to access proper treatment due to transportation or financial problems.

Third, the ALJ permissibly found that "Special Medical Vocational Profile 2" (the "Profile") did not apply to Harkous' claim during the period in question. (*Id*., PageID.94). To meet the Profile, *SSR 82-63,* requires the following:

> Generally, where an individual of advanced age with no relevant work experience has a limited education or less, a finding of an inability to make a vocational adjustment to substantial work will be made, provided his or her impairment(s) is severe, i.e., significantly limits his or her physical or mental capacity to perform basic work-related functions.

1982 WL 31390, at *5 (1982). Therefore, for the Profile to apply, a claimant must show: (1) advanced age; (2) a limited education or less; (3) the absence of a work history; and, (4) at least one severe impairment. *Id.*

Harkous indisputably meets requirements (1) and (3). However, her claim falls short on requirements (2) and (4). As to the second requirement, Harkous was required to show a "limited" education, which is defined as "a 7th grade through 11th grade formal education." 20 C.F.R. § 416.964(b)(3). The ALJ noted a "disagreement" as to Harkous' educational level, but concluded that she had a high school education, noting that at the hearing, Harkous "first testified that she attended

15

school in Lebanon until she was 22 years old," but later testified that she had completed fifth grade, then later only fourth grade. (ECF No. 16-2, PageID.93). The ALJ reasonably concluded that Harkous' initial testimony, coupled with her statement to consultative psychologist Czarnecki that she had a high school education, supported the conclusion that she had more than a limited education. (*Id*., *citing id*., PageID.109-110; ECF No. 16-7, PageID.369). Accordingly, this aspect of the ALJ's analysis is supported by substantial evidence.

Further, even assuming that Harkous could demonstrate that she did not have more than a limited education, as discussed above, substantial evidence supports the ALJ's finding that she did not experience any severe impairments during the non-disability period, which is the fourth criteria for disability under the Profile. *SSR 82-63*, at *5.

### 3. *The ALJ Provided a Sufficient Analysis of the Treating Physician Evidence*

Harkous also challenges the ALJ's adherence to the "treating physician" rule. Broadly, she argues that the ALJ erred "in weighing the opinion of the claimant's treating physician and by supplanting her own opinion for the medical judgment of the treating physican [sic]" (ECF No. 25, PageID.707), but then she offers up a slew of more individualized arguments. At any rate, none of these arguments have merit.

For the period under consideration here, the opinion of a treating physician is accorded controlling weight if "well-supported by medically acceptable clinical and

laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (*citing Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004)); 20 C.F.R. § 404.1527(c)(2), § 416.927(c)(2).  In the instance that the treating physician's opinion is accorded less than controlling weight, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson* at 544.

The ALJ must also provide "good reasons" for according less than controlling weight to a treating opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *Wilson*, 378 F.3d at 544–546; § 404.1527(c)(2), § 416.927(c)(2). The failure to articulate good reasons for rejecting a treating physician's opinion generally constitutes reversible error.   "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).   "These reasons must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, at 376 (internal citations omitted).  But "if a treating source's opinion is so patently

deficient that the Commissioner could not possibly credit it, a failure to observe §

1527[] may not warrant reversal. *Wilson* at 547.

First, Harkous argues that the ALJ erred in rejecting Dr. Ayad's opinion about

her mental impairments "on the basis that he is a family physician and not a

psychiatrist . . ." (ECF No. 25, PageID.716).  But the premise of Harkous' argument

is flawed; the ALJ simply did not discount Dr. Ayad's opinions on that basis.

Next, Harkous argues that the ALJ "erred in rejecting the opinions of the

treating physicians in favor of the opinions of the state agency doctors."  (ECF No.

25, PageID.717).  This argument lacks merit in multiple respects.  While Harkous

accuses the ALJ of improperly "rejecting" the opinions of her "treating physicians,"

Dr. Ayad was the only treating physician that provided an opinion.  Moreover, rather

than flat-out rejecting Dr. Ayad's medical opinion, the ALJ afforded "some weight"

to the doctor's opinion that Harkous' impairments (in June 2018) caused her to

experience "pain and depressed mood severe enough to be a constant distraction."

(ECF No. 16-2, PageID.92).[5]   Finally, as discussed below, the ALJ gave good

reasons for why she credited the consultative examiners' opinions over those of Dr.

---

[5] While it is true that the ALJ gave "no weight" to Dr. Ayad's opinion that Harkous could not perform "any meaningful work," the ALJ appropriately noted she was doing so because such an opinion is tantamount to an opinion that Harkous is disabled, which is "an issue reserved exclusively to the Commissioner."  (ECF No. 16-2, PageID.92).  *See* 20 C.F.R. § 416.927(d); *Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to [the treating doctor's] opinion because her conclusion that [the plaintiff] is totally disabled is a determination reserved to the Commissioner[.]").

Ayad.

Harkous saw Dr. Ayad numerous times, and on April 4, 2014, May 4, 2015, June 16, 2016, March 21, 2017, April 12, 2018, and June 16, 2018, the doctor indicated that major depression, insomnia, chronic back pain, insulin dependent diabetes mellitus, COPD, hyperlipidemia, and hypertension prevented Harkous from performing "any meaningful work." (ECF No. 16-8, PageID.425, 431; ECF No. 16-11, PageID.551, 560; ECF No. 16-12, PageID.640, 655). He stated further that Harkous "struggle[d] with [the] conditions on a daily basis" and continued "to suffer from pain and depressed mood severe enough to be a constant distraction." (*Id*.).

The ALJ specifically addressed the salient findings with respect to Dr. Ayad's June 16, 2018 opinion, assigning it "some weight." (ECF No 16-2, PageID.92, *citing* ECF No. 16-8, PageID.431). The ALJ reasoned that the findings of physical limitation (also creating some degree of psychological limitation) were supported by the April 10, 2018 imaging study, a conclusion Harkous obviously does not contest. (*Id.*)

In support of her finding of non-disability prior to April 10, 2018, however, the ALJ discussed Dr. Ayad's treating records from November 2016 forward, noting that while the records created between November 2016 and December 2017 showed several prescriptions for diabetes, GERD, and hypertension, the cardiac exam, lungs, abdomen, and musculoskeletal findings showed normal results. (*Id*., PageID.88).

The ALJ noted that prior to April 10, 2018, the record did not show clinical or imaging evidence of acute neuropathy or treating source observations of atrophy, weakness, sensation loss, or degenerative musculoskeletal changes. (*Id.*). She found that while Dr. Ayad diagnosed Harkous with major depression in 2015, he noted "'no signs of flat affect or panic attack or psychosis' [] and never reported abnormal mental exams prior to April 2018." (*Id.*) The ALJ observed that none of Dr. Ayad's records supported a diagnosis of dementia, and that the "only cognitive testing in the medical evidence of record is that performed by the psychological consultative examiner, which found no cognitive impairments." (*Id.*, PageID.89). These were all good reasons for not giving controlling weight to Dr. Ayad's opinions during the period of time when the ALJ found Harkous to be not disabled.

The ALJ observed further that the consultative examinations for the period prior to April 10, 2018, did not support the finding that any of Harkous' medically-determinable impairments would cause work-related limitations, thus belying any assertion that Dr. Ayad's contrary opinion should apply to the pre-April 10, 2018 timeframe. Specifically, the ALJ cited Cynthia Shelby-Lane, M.D.'s finding that "no [physical] functional limitations or deficit [were] noted," and earlier in the decision, the ALJ noted Julia A. Czarnecki, L.L.P.'s observation that Harkous "is not evidencing any significant cognitive impairments or problems with short-term working memory or concentration that would interfere with her ability to engage in

simple, routine, work-related activities or follow simple verbal or written instructions, other than restrictions due to language barriers." (ECF No. 16-2, PageID.88-89, 93; ECF No. 16-7, PageID.371; ECF No. 16-8, PageID.377). *See also supra* at 11-12.

Finally, viewing Dr. Ayad's opinion in context of the ALJ's decision as a whole also shows she did not err in failing to find Dr. Ayad's June 2018 opinion to be effective for the pre-April 10, 2018 timeframe, as the Commissioner construes Harkous to be arguing. (ECF No. 28, PageID.744). The ALJ based her April 10, 2018 disability onset date determination on x-rays from the same day showing the presence of degenerative changes and osteophyte of the cervical and lumbar spine. (ECF No. 16-2, PageID.90) (*citing* ECF No. 16-12, PageID.662). While Harkous seems to ask the Court to assume these degenerative changes must have existed well prior to the onset date determined by the ALJ (ECF No. 25, PageID.710), the ALJ explained, in detail, why the medical evidence belies such an assumption.

For example, in discussing the pre-disability period, the ALJ appropriately noted that "Dr. Ayad's physical exams revealed normal findings on [] musculoskeletal findings (muscle tone, range of motion, and spine alignment)," and that "the record contain[ed] no evidence of degenerative musculoskeletal changes (e.g., an abnormal x-ray or MRI)" (ECF No. 16-2, PageID.88 (citing ECF No. 16-7, PageID.310; ECF No. 16-12, PageID.642 ("normal muscle tone/bulk, no

deformities, normal range of motion, normal spine alignment"), 644 ("neck: no pain or masses," "no muscle pain or joint pain or swelling or change in ROM"), 650 (no pain or stiffness in neck)).  Yet later, in the portion of her decision finding Harkous became disabled on April 10, 2018, the ALJ noted that "x-rays taken on the established onset date revealed degenerative changes in [Harkous'] lumbar spine and cervical spine.  []  At subsequent appointments, Dr. Ayad observed decreased range of motion in the lumbar spine, decreased neck range of motion, and pain with lumbar motion.   This clinical and objective medical observation supports [Harkous'] allegation of low back pain with standing and walking . . ." (*Id.*, PageID.92 (citing ECF No. 16-12, PageID.629-30)).   The ALJ's discussion cannot reasonably be characterized as "supplant[ing] her own opinion for the medical judgment of the treating physician, and reject[ing] the longitudinal picture of Harkous's impairments."  (ECF No. 25, PageID.725).

In sum, all of the foregoing demonstrates the absence of any reversible error by the ALJ with respect to Dr. Ayad's opinions or the treating physician rule.

### 4.   *Harkous' Remaining Arguments Lack Merit*

Harkous' few remaining arguments do not provide grounds for remand. While she claims that dementia ought to have been included among the medically determinable impairments at Step Two (ECF No. 25, PageID.715), none of the treating records show that Harkous exhibited signs of dementia or underwent

cognitive testing for the condition. Moreover, as discussed above, *see supra* at 11-12, the ALJ thoroughly discussed the consultative examiner records and other medical records, which specifically indicated that Harkous was not suffering from a severe cognitive impairment.

Harkous' claim that the RFC for the period before April 10, 2018 is not well supported fails because the ALJ's analysis properly ended at Step Two of the sequential analysis. (*Id.*, PageID.716). Likewise, while Harkous claims that her language limitations were not considered (*id.*, PageID.710), the evaluation of the factors of language and educational limitations (vocational factors considered at Steps Four and Five) were mooted by the non-disability finding at Step Two. As discussed above, although the issue was disputed, the ALJ provided a reasoned and reasonable analysis for concluding that Harkous had a high school education. This Court cannot re-weigh that evidence. *See Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the [Commissioner].").

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision should be affirmed.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the

23

Commissioner's Motion for Summary Judgment **(ECF No. 28)** be **GRANTED**, Harkous' Motion for Summary Judgment **(ECF No. 25)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: August 12, 2021                    s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                          United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 11, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager